UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EUGENE R. LAMPRECHT,

    Plaintiff,

  v.

HAL NEDERLAND N.V., *et al.*,

    Defendants.

Case No. C04-0166L

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendants HAL Nederland, N.V., *et al.* (Dkt. #14). Plaintiff, Eugene Lamprecht, sustained injuries as a passenger on a cruise abroad the S/S RYNDAM; he brings a cause of action against all defendants alleging that the crew's negligence caused his injury.

For the reasons set forth below, the Court grants defendants' motion in part, and defers ruling on the motion in part.

## II. DISCUSSION

**A.**    **Background Facts.**

Plaintiff was a passenger abroad the S/S RYNDAM sailing to Buenos Aires, Argentina

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 1

from the Falkland Islands. On the evening of March 13, 2003, a second officer was on the bridge along with two Able Bodied Seamen. As the vessel approached the Buenos Aires pilot station at approximately 18:19, the second officer ordered one of the seamen to switch from autopilot to hand steering. Due to a malfunction in the autopilot computer, the rudders moved "hard over" and did not respond to hand steering. As a result, the boat began to turn sharply to starboard and the vessel suddenly tilted, also known as "heeling" or "listing," without warning. The second officer tried switching the hand steering/automatic steering switch on and off, but to no avail. Meanwhile, the chief officer was summoned, arrived approximately one minute after the incident began, and immediately ordered the crew to reduce speed. By 18:21, the ship's speed had been reduced from 17.3 knots to 11.4 knots. One of the seamen then switched to the non-follow-up ("NFU") tiller, also known as the override tiller, disengaging the autopilot and allowing the crew to regain control of the vessel.

The sharp turn caused the vessel to list as much as twenty degrees off horizontal. The vessel's list threw plaintiff, who was having dinner, from his dining chair to the deck. Plaintiff sustained a rotator cuff tear and contusions and strains to his torso, spine and limbs.

Once the vessel reached Buenos Aires, the steering system, including the autopilot and its electrical components, was tested by representatives of the third party who manufactured it. The testing and defendants' subsequent investigation revealed that a malfunction had occurred within the steering system, causing the rudders to go hard over and the loss of steering control.

The vessel was owned by HAL Nederland N.V. and chartered by Holland America Line N.V. Plaintiff alleges that Holland America Line, Inc. was the owner/operator/charterer of the vessel. Plaintiff asserts a negligence claim against all three defendants. Plaintiff concedes that defendants did not manufacture the autopilot computer or cause its failure. Instead, he argues that the crew breached the standard of care in their response to the failure.

**B.     Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 2

favorable to the nonmoving party and determine whether there are any genuine issues of material fact . . . ." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004).  All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.    Negligence Claim.**

The parties agree that the applicable standard of care requires defendants and their crew to exercise reasonable care under the circumstances.  Plaintiff alleges that the crew was negligent in failing to reduce speed and switch to the NFU tiller immediately, both of which, he alleges, would have reduced the vessel's tilt and reduced the likelihood of injuries to passengers.  Defendants' experts opine that the crew had very little time to react and responded appropriately.

**1.    Timeliness of Expert Reports.**

Before considering the merits of the negligence claim, the Court considers the scope of admissible evidence.  Defendants argue that prior to the February 28, 2005 deadline for disclosure of expert reports, plaintiff produced only the January 27, 2005 Declaration of Dr. Marc B. Wilson.  Declaration of Lance Palmer ("Palmer Decl."), Ex. 13.  Plaintiff did not produce the report of Captain Arthur Joel Levine until March 14, 2005.  Id., Ex. 12.  Plaintiff produced the "Preliminary Report" of Dr. Wilson for the first time with its response to defendants' motion for summary judgment.  Id., Ex. 13.

Under Fed. R. Civ. P. 26(a)(2), a party must disclose and provide reports for "any person who may be used at trial to present" expert testimony.  The expert disclosure mechanism also allows a party to designate additional experts within thirty days after the initial expert disclosures, but the new expert testimony must be restricted to rebutting or contradicting the expert testimony initially designated by the opposing party.  The rebuttal expert submissions are

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 3

limited to attacking the theories offered by the adversary's experts; they may not put forth their own theories or opinions.

The expert report from Captain Levine is not properly characterized as rebuttal. The topics covered in the report have been at issue since the beginning of the case. There is no question that plaintiff should have known that expert testimony regarding the crew's negligence would be a necessary part of his case-in-chief. Although Captain Levine's report purports to be a rebuttal document, he does not address any particular opinion or conclusion reached by the opposing expert. Instead, he presents his own theories. In effect, plaintiff used the rebuttal opportunity to shore up Dr. Wilson's brief and conclusory initial declaration. Furthermore, Dr. Wilson's preliminary report was untimely even if characterized as a rebuttal disclosure.

Despite the untimely disclosure of Captain Levine's and Dr. Wilson's reports, the Court finds that exclusion is not the appropriate remedy under the circumstances. Plaintiff's delay, though without explanation or excuse, nevertheless left defendants with numerous options, which they have utilized, including deposing Captain Levine and Dr. Wilson and filing reply declarations from both of their own experts. Prior to the filing of defendants' motion, plaintiff's primary theory was that defendants caused the mechanical failure. He has now abandoned that claim, and alleges that the crew's reaction was negligent. Despite defendants' assertion to the contrary, they were aware, prior to the expert disclosure deadline, that plaintiff was alleging negligence based in part on the crew's reaction to the autopilot failure. Plaintiff's timely-disclosed designation of expert witnesses stated that Dr. Wilson would opine that the crew "negligently caused the heel over and/or negligently responded to the heel-over, causing injury to passengers." Declaration of Lance Palmer in Support of Plaintiff's Surrreply, Ex. 1. Finally, the Court prefers to decide issues on their merits, with both parties having every opportunity to present their best arguments. For these reasons, the Court considers all of the expert reports.

**2.    Sufficiency of Expert Reports.**

Defendants argue that even if Dr. Wilson's and Captain Levine's reports are considered

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 4

despite their untimely disclosure, they lack a factual basis and are therefore inadmissible under Fed. R. Ev. 702. Federal Rule of Evidence 702 requires that expert testimony be "based on sufficient facts or data." See also United States v. Various Slot Machines on Guam, 658 F.2d 697, 700 (9th Cir. 1981) (explaining that "in the context of a motion for summary judgment, an expert must back up his opinion with specific facts").

### a.  Captain Levine's Report.

Captain Levine opines that defendants negligently failed to train the crew in how to react properly to a loss of steering control. However, Captain Levine does not state any knowledge of the crew's training. Instead, his opinion appears to be based solely on the crew's actions. The crew's actions, however, are not necessarily indicative of what training they did or did not receive. Accordingly, his conclusions regarding training are unsupported by specific facts, and do not meet the requirements of Fed. R. Ev. 702.

Captain Levine also opines that if the crew had immediately reduced speed and activated the NFU system, plaintiff's injuries might have been prevented. However, Captain Levine has not offered any facts, or even speculation, regarding when plaintiff's injury occurred, or when the crew should have brought the turn under control in the exercise of reasonable care. The timing issues are crucial because it is undisputed that defendants did not cause the uncontrolled turn, and that the hard-over rudders would have produced some listing almost immediately. In the absence of facts regarding the timing of crucial events, Captain Levine's conclusions are too speculative to meet the requirements of Fed. R. Ev. 702. For the same reasons, Captain Levine's opinion is speculative that in the exercise of reasonable care, the crew should have given a warning before plaintiff fell from his chair.[1]

---

[1] Plaintiff's claim regarding the failure to warn fails for a second reason. Both defendants' experts and Dr. Wilson opined that the heel developed so quickly that by the time the crew could have issued a warning, the ship's tilt would have been obvious to all on board. Wagner Reply Decl. at ¶ 5(c); see also Palmer Decl., Ex. 13 (Dr. Wilson's Preliminary Report)

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 5

Captain Levine opines that defendants were negligent in several other ways. First, he states that industry practice is to conduct a noontime steering changeover from port to starboard steering, or vice versa, and had the crew performed that changeover, the steering failure might have occurred at open sea rather than on the approach to the pilot station. Palmer Decl., Ex. 12 (Captain Levine's Report) at p. 7. This opinion is conclusory and does not explain how plaintiff's injuries would have been avoided. Second, Captain Levine opines that the crew failed to perform a pre-arrival navigation check, which "might well" have revealed the problem. This opinion is speculative and does not explain how the mechanical failure, which had not yet occurred, could have been detected during an inspection. Third, Captain Levine states that it was negligent of the Master to have been absent from the bridge when the ship was less than an hour from the pilot station. However, it is undisputed that the ship was an hour and forty minutes out when the problem occurred.

Finally, Captain Levine argues that the Master's standing orders were incomplete because they did not include switching to the NFU unit in the event of a steering failure. Palmer Decl., Ex. 12 (Captain Levine's Report) at p. 9. Captain Levine notes that after the incident, the RYNDAM's Master amended his standing orders to include switching to the NFU in the event of a steering failure. The change in the orders is offered to prove negligence and is inadmissible as a subsequent remedial measure. Fed. R. Ev. 407. Furthermore, Captain Levine's opinion is based on insufficient facts. He notes that because a heel-over had occurred twice before, in 1999 on the RYNDAM and in 2002 on its sister ship, the incident in 2004 was foreseeable and "it was a breach of the standard of care not to have fleet-wide standing orders to immediately reduce speed and switch to the NFU unit in the event of a steering failure." Palmer Decl., Ex. 12 (Captain Levine's Report) at p. 9. Although the prior two incidents involved an autopilot failure, the crew did not resolve either incident using the NFU tiller. In the 1999 incident, the

---

at p. 4. The crew is not obligated to warn of dangers which are apparent and obvious. See, e.g., Luby v. Carnival Cruise Lines, Inc., 633 F. Supp. 40 n.41 (S.D. Fla. 1986).

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 6

crew regained control by reducing speed and switching to the follow-up ("FFU") tiller; the RYNDAM's 2004 crew attempted to switch to the FFU tiller without success. Captain Levine does not state how the crew regained control of the ship in the June 2002 incident.

Accordingly, the Court finds that Captain Levine's report does not meet the requirements of Fed. R. Ev. 702 and is therefore inadmissible.

### b. Dr. Wilson's Report.

Like Captain Levine, Dr. Wilson opines that defendants negligently failed to train the crew but acknowledges that he does not know how the crew was trained, or how the seaman who ultimately activated the NFU steering system knew to do so. See Palmer Decl., Ex. 13 (Dr. Wilson's Preliminary Report) at p. 4. His conclusions regarding training are unsupported by specific facts and do not meet the requirements of Fed. R. Ev. 702.

Dr. Wilson also opines that if the crew had immediately reduced speed and activated the NFU system, they "may have regained control of the vessel earlier in the turn and reduced the maximum heel." Palmer Decl., Ex. 13 (Dr. Wilson's Preliminary Report) at p. 5. Dr. Wilson opines, based on rudder trials and the fact that the vessel was at sea, that the crew had approximately fifteen seconds to recognize the problem, diagnose its cause, and implement a solution. Id. at p. 5. He concludes that the second mate violated the Standards of Training, Certification, and Watchkeeping ("STCW") in failing to reduce speed and activate the NFU within that period of time. It is not possible to determine, based on the current record, if Dr. Wilson is an expert in this area and whether his opinion should be allowed under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). If his opinion is allowed, then the Court will consider whether it is sufficient to defeat defendants' motion.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART defendants' motion for summary judgment (Dkt. #14). Defendants' motion is granted as to all of plaintiff's theories of

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 7

negligence except the theory proposed by Dr. Wilson, that the second mate's reaction to the mechanical failure violated the STCW in failing to reduce speed and activate the NFU within fifteen seconds after the failure was discovered. The Court will hold a one-day <u>Daubert</u> hearing beginning at 9:00 a.m. on September 21, 2005 regarding Dr. Wilson's qualifications and opinion on that issue; the Court will also hear oral argument regarding the admissibility of Dr. Wilson's opinion and its sufficiency to defeat defendants' motion for summary judgment. Dr. Wilson shall attend the hearing. If this date presents a conflict for the parties and/or Dr. Wilson, counsel must contact Teri Roberts, judicial assistant, at (206) 370-8810 to discuss rescheduling the hearing.

      The Clerk of Court is directed to re-note defendants' motion for summary judgment on the Court's calendar for September 23, 2005. The Court strikes the deadlines for filing motions in limine, the pretrial order, and trial briefs, and strikes the trial date. All other dates shall remain in effect.

      DATED this 26th day of May, 2005.

                                        /s/ Robert S. Lasnik
                                        Robert S. Lasnik
                                        United States District Judge

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT - 8